IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOEL VICARS, | ) | |
| | ) | |
|     Plaintiff, | ) | Civil Action No. 7:20cv00152 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD CLARKE, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |         United States District Judge |
|     Defendants. | ) | |

Joel Vicars, an inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, alleging that the defendants violated his rights to equal protection and due process. This matter is before the court on defendants' motion to dismiss. Having reviewed the pleadings, the court will grant defendants' motion.

## I.

Vicars is a Virgin Islands inmate and is in the custody of the Virginia Department of Corrections ("VDOC") pursuant to a contract between the two jurisdictions. Vicars is Rastafarian and keeps his hair long pursuant to his religious beliefs. Vicars arrived at Wallens Ridge State Prison ("Wallens Ridge") on June 17, 2011, and was "immediately placed in segregation" based on the Virginia Department of Corrections' ("VDOC") Operating Procedure ("OP") 864.1, which required such housing for inmates who refused to cut their hair for religious reasons. Approximately one year later, Vicars was transferred from the segregation unit into the Grooming Standards Violator Housing Unit ("VHU") at Wallens Ridge. The VHU at Wallens Ridge was the only VHU in the state. Vicars claims that while he was housed in the VHU, he requested a transfer to lower security facility, but his request was

denied because he was not eligible for a security-level reduction and transfer because of the grooming policy. Vicars remained in the VHU from April 2012 to July 2019, when OP 864.1 was revised and the "VHU was dismantled." Under the revised OP 864.1, inmates housed in the VHU were given the opportunity to allow a photograph to be taken simulating the inmate's appearance as clean-shaven and with short hair. Inmates who complied with the simulation photograph requirement would be "classified to the appropriate security level and transferred to a suitable institution." Vicars complied with this request.

Vicars claims that after the VHU was dissolved, inmates housed in the VHU were transferred "all over the state" to their appropriate security level facilities. Vicars claims that one other Virgin Islands inmate was transferred to Keen Mountain Correctional Center ("Keen Mountain"), but Vicars was kept at Wallens Ridge even though he is "not a [security] level 5 inmate."[1]

On June 21, 2019, Vicars had his annual review before the Institutional Classification Authority ("ICA"). After the hearing, the ICA recommended that Vicars be transferred to Keen Mountain because he had complied with the photo requirement under the revised OP 864.1, he would be eligible for a transfer to a lower level institution, and he had shown good institutional behavior towards staff and fellow inmates. The ICA also noted that Vicars had received one disciplinary infraction in the past two years. The ICA's recommendation was sent

---

[1] In addition to the one Virgin Islands inmate who was transferred to Keen Mountain, Vicars also provided the court with another Virgin Islands inmate's Institutional Classification Authority Hearing report and grievances indicating that, in July 2019, the other inmate was approved for transfer to Keen Mountain upon availability of bed space. However, the court notes that the VDOC's inmate locator, accessible to the public online, indicates that the inmate is still housed at Wallens Ridge State Prison. *See* Virginia Department of Corrections, Offender Locator, https://vadoc.virginia.gov/general-public/offender-locator/ (last visited Jan. 24, 2021).

for Administrative Review and was approved on July 27, 2019. On July 8, 2019, however, the Central Classification Services ("CCS"), through defendant Gensinger, disapproved Vicar's transfer, stating that his "[c]urrent assignment remains appropriate." The CCS is the final authority on such matters.

Vicars argues that the defendants violated his right to equal protection because another Virgin Islands inmate from the VHU was transferred to Keen Mountain and Vicars was not. He also argues that the defendants violated his right to due process because they denied his transfer to Keen Mountain "without a hearing or a legit reason."[2]

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*,

---

[2] It appears to the court that Vicars' complaint is only challenging the denial of a transfer after the VHU was dissolved in the summer of 2019.

550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

### III.

Vicars argues that the defendants violated his right to equal protection because another Virgin Islands inmate who had been housed in the VHU was transferred to Keen Mountain,

but Vicars was not. The court concludes that Vicars has not adequately stated a viable equal protection claim and, therefore, will grant defendants' motion to dismiss this claim.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under the Equal Protection Clause, "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection violation, a plaintiff must demonstrate: (1) "that he has been treated differently from others with whom he is similarly situated"; and (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir.2001).

Two groups of people are "similarly situated" only if they "are similar in all aspects relevant to attaining the legitimate objectives" of the policy or legislation. *Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007). "Generally, in determining whether persons are similarly situated for equal protection purposes, a court must examine all relevant factors." *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996). The thrust of the inquiry is whether the plaintiff can "identify persons materially identical to him or her who ha[ve] received different treatment." *Kolbe v. Hogan*, 813 F.3d 160, 185 (4th Cir. 2016). To pass the similarly-situated threshold, "the 'evidence must show a high degree of similarity'"— that is, "'apples should be compared to apples.'" *Id.* (quoting *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010); *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001)). In addition, to succeed on an equal protection claim, a plaintiff also must set forth "specific, non-conclusory factual allegations that establish

improper motive."[3] *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

Here, Vicars alleges the defendants violated his right to equal protection when they transferred another Virgin Islands VHU inmate to Keen Mountain but did not transfer him. Vicars claims that he and the other inmate were similarly situated because they were both Virgin Islands inmates "under the same out of state status" and they were both housed in the VHU prior to the amendment of the grooming policy. However, Vicars does not allege that he and the other inmate had the same disciplinary record or even the same security classifications, factors that would be relevant to a decision to transfer an inmate to a lower security facility. Accordingly, Vicars has not adequately alleged that he and the other inmate were similarly situated such that they both should have been transferred to Keen Mountain.

In addition, Vicars fails to allege that any difference in treatment was a result of intentional or purposeful discrimination. Vicars has not plausibly alleged that any of the named defendants were motivated by discriminatory animus. *See Brown v. Warner*, 2014 U.S. Dist. LEXIS 59548, at *24 (E.D. Wash. Apr. 10, 2014) ("Two isolated instances when one inmate is charged with fighting for engaging in defensive tactics while another is not, does not support an equal protection claim," for "[a] mere showing of inequality does not establish an equal protection violation," particularly where the "Plaintiff has failed to allege facts showing he was intentionally treated differently from similarly situated inmates.") Accordingly, the court

---

[3] Once these showings are made, then the court will determine "whether the disparity in treatment can be justified under the requisite level of scrutiny." *Veney v. Wyche,* 293 F.3d 726, 731 (4th Cir. 2002) (quoting *Morrison*, 239 F.3d at 654). Disparate treatment of similarly situated prisoners "passes muster so long as [it] is 'reasonably related to [any] legitimate penological interests.'" *Veney,* 293 F.3d at 732 (alteration in original) (quoting *Shaw v. Murphy,* 532 U.S. 223, 225 (2001)).

concludes that Vicars has failed to allege a viable equal protection claim and the court will grant defendants' motion to dismiss the equal protection claim.[4]

## IV.

Vicars also alleges that the defendants violated his right to due process because he was denied "access to a suitable institution" "without a hearing or legit reason." For the following reasons the court will grant defendants' motion to dismiss this claim.

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[C]hanges in a prisoner[']s location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison . . . ." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991).

---

[4] Furthermore, Vicars has not identified any specific alleged misconduct with respect to defendants Clarke, Robinson, Mathena, Manis, or Anderson as to this claim. To state a claim under § 1983, a plaintiff must show direct personal involvement by each individual defendant. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in a civil rights case is "personal, based upon each defendant's own constitutional violations"); *see also Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995). As the Supreme Court has cautioned, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Vicars has not alleged that these defendants were actually aware of any of the alleged misconduct or had any personal role in violating Vicars' constitutional rights. Vicars does not identify any conduct by defendant Clarke, Robinson, Mathena, Manis, or Anderson that caused him harm, or that they were in anyway involved in or responsible for, the allegations relating to his equal protection claim. Because Vicars has not alleged that these administrative corrections officials engaged in any conduct that violated any constitutionally protected right themselves, he has failed to state an equal protection claim against them. *See, e.g., Campbell v. Angelone*, No. 7:01cv01023, 2004 U.S. Dist. LEXIS 30065, at *5-9 (W.D. Va. Apr. 16, 2004) (granting summary judgment on behalf of supervisory officials where the plaintiff failed to allege that the supervisors had any direct involvement with an alleged constitutional injury).

Demonstrating the existence of a state-created liberty interest requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 & n.3 (4th Cir. 2015) (quoting *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000)). First, a plaintiff must make a threshold showing that the imposed deprivation amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see Puranda v. Johnson*, No. 3:08CV687, 2009 U.S. Dist. LEXIS 93226, at *11, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases). If the nature of the restraint the plaintiff challenges meets either prong of this threshold, the plaintiff must next show that Virginia's statutory or regulatory language "'grants its inmates . . . a protected liberty interest in remaining free from that restraint.'" *Puranda*, 2009 U.S. Dist. LEXIS 93226, at *11, 2009 WL 3175629, at *4 (alteration in original) (quoting *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000)).

Vicars fails to demonstrate that he enjoys a liberty interest in a specific security classification or transfer to a specific facility. *Chapman v. Bacon*, No. 3:14CV641, 2017 U.S. Dist. LEXIS 19539, at *34, 2017 WL 559703, at *13 (E.D. Va. Feb. 10, 2017) ("*Sandin* itself forecloses the notion that all forms of punitive or administrative segregation presumptively constitute an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). Vicars has not alleged that his confinement in general population at Wallens Ridge constitutes an "atypical and significant hardship" in relation to the ordinary incidents of prison life."[5] *Sandin*, 515 U.S. at 484-85.

---

[5] Although Vicars describes no conditions of his confinement, he attaches to his complaint an informal complaint and grievance, both filed by another inmate, which indicates that at Wallens Ridge, there is a "lack of rehabilitation for inmates on a level 3-1" and a "lack of V[irgin] I[slands] law studies." Even if Vicars were asserting these "conditions" of confinement himself, the court concludes that they are not sufficiently atypical or significant in relation to the ordinary incidents of prison life.

Furthermore, Vicars fails to direct the court to any Virginia statutory or regulatory language that gives rises to a protected liberty interest in his transfer to Keen Mountain being approved. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) (holding that state prison regulations restricting certain categories of visitors at prison facilities did not give inmates a liberty interest in receiving visitors); *Olim v. Wakinekona*, 461 U.S. 238, 251 (1983) (holding that state prison regulations did not create a protected liberty interest in being transferred to an out-of-state facility). And to the extent Vicars attempts to allege a deviation from VDOC policy, that alone "is not a federal due process issue." *Brown v. Angelone*, 938 F. Supp. 3d 340, 344 (W.D. Va., 1996) (citing *Riccio v. Cnty. of Fairfax, Va.,* 907 F.2d 1459, 1469 (4th Cir. 1990)). For these reasons, the court concludes that based on Vicars' allegations, any due process challenge to the disapproval of his request for a transfer to Keen Mountain fails.[6]

## V.

For the reasons discussed, the court will grant defendants' motion to dismiss Vicars' complaint. However, because it is possible that Vicars could allege other facts that would support a viable federal claim, the court will give him 30 days to file a motion to reopen this case with an amended complaint.[7]

**ENTERED** this 27th day of January, 2021.

                                                     */s/ Thomas T. Cullen*
                                                   HON. THOMAS T. CULLEN
                                                   UNITED STATES DISTRICT JUDGE

---

[6] Furthermore, Vicars fails to identify any specific alleged misconduct of defendants Clarke, Robinson, Mathena, Manis, or Anderson as to this claim. Even assuming arguendo Vicars articulated a protected liberty interest, Vicars has not alleged that any of these individuals were responsible for the alleged deprivation of due process. Further, the evidence Vicars submits in support of the complaint refutes his claim that he did not receive a hearing by demonstrating that he indeed had a hearing.

[7] The court notes that Vicars must submit a proposed amended complaint with any such motion to reopen.